## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** ) ) ) | |
| Plaintiff, ) ) | |
| ) | **CIVIL ACTION NO.** |
| v. ) ) | |
| ) | **COMPLAINT** |
| **MASTER MARINE, INC.,** ) ) ) ) ) | |
| ) | **JURY TRIAL DEMAND** |
| Defendant. ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e et seq. and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sex (male) and race (Asian and Black), and to provide appropriate relief to Tyler Keopraseuth, Pilar Jackson, Aaron McCorvey, and Arrin Graham, who were adversely affected by such practices. As alleged with greater particularity in paragraphs eleven (11) through fifteen (15) below, Defendant Master Marine, Inc., ("Defendant" or "Master Marine") subjected Keopraseuth to harassment because of sex (male) and/or race (Asian), and subjected Jackson, McCorvey, and Graham to harassment because of their race (Black) at Defendant's Bayou La Batre, Alabama facility, and failed to take prompt, remedial action despite repeated employee complaints.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5(f)(1)("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the Southern Division of the United States District Court for the Southern District of Alabama.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. Section 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been an Alabama corporation doing business in Mobile County, Alabama, and has continuously had over 100 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Keopraseuth filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On February 28, 2018, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting

Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.      In its efforts to conciliate, the Commission engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9.      On May 29, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10.     All conditions precedent to the institution of the lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11.     From approximately January 2016 until June 2016, Defendant engaged in unlawful employment practices at its Bayou La Batre, Alabama facility in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1) and 2000e-2(a).

12.     Specifically, Defendant subjected Keopraseuth, an Asian male who worked at Defendant's Bayou La Batre, Alabama facility, to severe, pervasive, unwanted, degrading and offensive race and sex harassment, based on his sex and/or race. Defendant subjected Jackson, McCorvey, and Graham, who worked at the same location to severe, pervasive, unwanted, degrading and offensive harassment, based on their race (Black).

13.     The unlawful race and sexual harassment, which was perpetrated by Defendant's lead welder Chad Carr ("Carr"), included, but was not limited to, the following unwelcomed conduct that created a hostile work environment:

        a)      Carr regularly made sexual comments to Keopraseuth such as "You

3

have a nice ass" and "Boy, you have a nice ass."

b) Carr smacked and squeezed Keopraseuth's buttocks on several occasions.

c) On one occasion, Carr grabbed Keopraseuth's buttocks forcefully as if he was going to pick him up.

d) On another occasion, Carr reached between Keopraseuth's legs as if to grab Keopraseuth's testicles.

e) Carr saw a hole in the back of Keopraseuth's jeans and stuck his finger through the hole, touching Keopraseuth's buttocks.

f) Carr told Keopraseuth on numerous occasions he should be paid in rice because he is Asian.

g) On numerous occasions Carr called Keopraseuth a "noodle-eating bastard."

h) Carr stuck a crescent wrench between Keopraseuth's legs.

i) On numerous occasions Carr told Keopraseuth that his friends (the black employees) should be paid in bananas.

j) On a daily basis Carr referred to African American welders, including Pilar, McCorvey, and Graham, as the "nig***s", and called them "boy."

k) Carr regularly called Keopraseuth "rice-boy" and called the black employees racial slurs such as banana boy, and monkey boy.

l) Carr told him "you have a fucked-up attitude because you hang out with "nig***s", and you should stay with "your own kind."

m) Carr called McCorvey "n****r", "nig**r-boy" and "monkey boy"

4

on a daily basis.

    n)    When McCorvey confronted Carr about his use of racial slurs, Carr refused to stop, saying that he could do as he wanted, and they [the Black employees] would take it.

    o)    On another occasion, Carr threatened McCorvey with discipline, saying, "I'll tell you what, n****r, you do what I say or I will give you 5 points."

    p)    Carr frequently insulted Graham calling him "n****r", "monkey boy" and "dumbass nig**r" to the point that he made Graham cry.

14.    The practices complained of in paragraph 13 continued until Carr voluntarily left employment with Defendant on June 16, 2016 for reasons unrelated to this harassment.

15.    Based on repeated verbal and written complaints of Keopraseuth, Jackson, McCorvey, and other employees, and based on the open and notorious nature of Carr's harassment, Defendant's Human Resources employees, as well as Defendant's President and Yard Manager were made aware of Carr's ongoing race and sexual harassment on its premises, but failed to take prompt remedial action, allowing the harassment to continue until Carr voluntarily left his employment with Defendant.

16.    The effect of the practices complained of in paragraph(s) eleven (11) through fifteen (15) above has been to deprive Keopraseuth, Jackson, McCorvey, and Graham of equal employment opportunities and otherwise adversely affected their status as employees because of their race and/or sex.

17.    The unlawful employment practices complained of in paragraphs eleven (11) through fifteen (15) above were intentional.

18. The unlawful employment practices complained of in paragraphs eleven (11) through fifteen (15) above subjected Keopraseuth, Jackson, McCorvey, and Graham to a hostile work environment based on their race and/or sex.

19. The unlawful employment practices complained of in paragraphs eleven (11) through fifteen (15) above were done with malice or with reckless indifference to the federally protected rights of Keopraseuth, Jackson, McCorvey, and Graham.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in race and sexual harassment, and any other employment practices which discriminate on the basis of race or sex.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for persons protected from discrimination and for persons who oppose conduct prohibited by Title VII, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Keopraseuth, Jackson, McCorvey, and Graham by providing, as appropriate, compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs eleven (11) through fifteen (15) above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

D.   Order Defendant to pay to Keopraseuth, Jackson, McCorvey, and Graham punitive damages for its malicious and reckless conduct described in paragraphs eleven (11) through fifteen (15) above, in amounts to be determined at trial.

E.   Grant such further relief as the Court deems necessary and proper in the public interest.

F.   Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

RESPECTFULLY SUBMITTED,

James L. Lee
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street E
Washington, DC 20507

MARSHA RUCKER (PA Bar No. 90041)
Regional Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street, South
Birmingham, Alabama 35205
Telephone: (205) 212-2045
Facsimile: (205) 212-2041